Filed 3/3/23  P. v. Riley CA2/5
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B298450 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA079324) |
| v. | |
| SAID RILEY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Judith L. Meyer, Judge.  Affirmed.

Caneel C. Fraser, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, and Michael C. Keller and Charles S. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant and appellant Said Riley (defendant) on two counts of murder (one first degree murder and the other second degree) and two counts of robbery. The jury found true a multiple murder special circumstance, which resulted in a life without possibility of parole sentence on the first degree murder conviction. Many years later, defendant filed a petition for resentencing pursuant to former Penal Code section 1170.95, now codified at Penal Code section 1172.6.[1] The trial court denied the petition and we affirmed, holding there was no error in failing to appoint counsel for defendant because he was ineligible for relief as a matter of law. (*People v. Riley* (May 26, 2021, B298450) [nonpub.opn.] (*Riley I*).)

Our Supreme Court granted review and remanded the cause to us for reconsideration in light of its holding in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*). We now hold that, under *Lewis*, the trial court erred by not appointing counsel for defendant but the error was harmless for the same reasons we previously identified as establishing defendant is not entitled to relief as a matter of law: defendant's jury was not instructed on the natural and probable consequences doctrine and there is no realistic prospect the jury found defendant guilty of murder on a felony murder theory or any other theory by which malice may be imputed.

## I. BACKGROUND

We previously judicially noticed—at defendant's request—the appellate opinion resolving defendant's (and his co-defendant

---

[1] Undesignated statutory references that follow are to the Penal Code.

Eddie Betancourt's) direct appeal: *People v. Betancourt et al.* (Mar. 11, 2013, B237204) [nonpub. opn.] (*Betancourt*). Defendant has not asked us to reconsider that decision, and insofar as it is required, we again judicially notice the opinion and rely on it solely for a limited purpose: to describe the basic offense conduct for background purposes and to establish the procedural history of the case—including the instructions given and not given to the trial jury. (See generally *Lewis*, *supra*, 11 Cal.5th at 972; see also § 1172.6, subd. (d)(3).)

### A. The Offense Conduct

Early on the morning of April 24, 2008, officers from the Los Angeles Police Department responded to a 911 call of shots fired in an alley. When the officers arrived at the scene, they found the body of Lauri Gilbert (Gilbert) in the front passenger seat of a two-door Acura Legend. She had been shot three times in the head. Gilbert was pregnant at the time she was shot, and the fetus died as a result of her death.

James Davis (Davis), who owned the Acura and who had made the 911 call, told police that he had been part of a group that had gone looking to buy drugs. In addition to Davis, the group included defendant, Eddie Betancourt (Betancourt), and victim Gilbert. Davis drove the group to an alley behind a library, where Gilbert got out of the car and disappeared down the alley. When she returned, the drugs she purchased were weighed and found to be "short" (i.e., less than what the group had paid to receive), a fact that appeared to make Betancourt and defendant upset.

After trying but failing to find the seller of the drugs, Davis drove back to Gilbert's apartment and parked in the alley. Davis,

Betancourt, and defendant got out of the car. As Davis walked toward the rear of the vehicle, Betancourt pulled out a gun and pointed it at Gilbert. When Davis heard a gunshot, he ran away. As he ran, Davis heard two additional gunshots. Other witnesses also described hearing one shot followed by a pause and then two or more shots.

### B. Trial, and the Instructions Given to the Jury

At trial, Betancourt testified he fired a shot that did not hit Gilbert and defendant then grabbed the gun and shot and killed her. Defendant, in an interview with investigating officers (a recording of which was played at trial), denied shooting Gilbert. He also denied being in the same car as Davis, Betancourt, and Gilbert, or being present when Gilbert was shot.

As relevant for our purposes, the trial court instructed the jury on aiding and abetting principles,[2] murder generally, and the elements of first and second degree murder specifically. The jury was not instructed on the natural and probable consequences theory of aiding and abetting. Nor was the jury given then-

---

[2]   As recounted in *Betancourt*: "The jury was instructed that a person aids and abets a crime if he knows of the unlawful purpose of the perpetrator, has the intent or purpose of committing or encouraging the commission of the crime and aids or encourages the intended crime. The instructions further stated that an aider and abettor's guilt is determined by the acts of the participant and that person's 'own mental state.' The instructions also told the jury that an aider and abettor might have a more culpable or less culpable mental state than the actual perpetrator and that the aider and abettor's guilt could therefore be greater or less than the actual perpetrator's guilt."

customary felony murder instructions; the court understood, as it said in discussions with counsel, that "'this isn't a felony murder case.'" The trial court did, however, give the jury an instruction patterned on CALJIC No. 8.10 that generally defined murder. The instruction as given erroneously included language that could have been read, in isolation, to permit a finding of murder liability based on commission of a felony, specifically, assault with a firearm. Here is how *Betancourt* describes it: "CALJIC No. 8.10, as given in this case, told the jury that 'Every person who unlawfully kills a human being or fetus with malice aforethought or a felony inherently dangerous to human life is guilty of the crime of murder in violation of Penal Code section 187.' Under the typed words 'to human life' the phrase 'assault with a firearm' is handwritten in. The instruction also states: 'The killing was done with malice aforethought or ___ a felony inherently dangerous to human life namely assault with a firearm ___ is a felony inherently dangerous to human life.'"

This instruction generally defining murder, of course, was not the only murder instruction the jury received. The jury was also given an instruction describing the elements of first degree murder, including the requirement of proof of express malice, as well as an instruction defining malice itself. Neither of these instructions made reference to an inherently dangerous felony like the general instruction patterned on CALJIC No. 8.10 did.

Following the defense closing argument, the trial court clarified for the jury the theories of murder that were at issue and felony murder was not among them: "In this case there are three degrees of murder or three theories of murder that are being presented to you. [¶] One is first degree murder where you have an intent to kill and there is premeditation and

deliberation. [¶] There are two types of second-degree or two degrees of second degree murder. One where you have [an] intent to kill with no premeditation and deliberation. [¶] And the second that we are calling implied malice murder where an act is done without intent to kill and the natural consequences of which are dangerous to human life. [¶] Depending upon what you find to be the facts, those three different types may apply to count 1 [the alleged murder of Gilbert] with respect to either defendant. But only the second-degree implied malice applies to count 2 [the alleged fetal murder]."

The jury convicted defendant (and Betancourt) of first degree murder on count one and second degree murder on count two.[3] The jury found true the multiple murder special circumstance allegation. The jury also found true allegations that Betancourt (1) personally and intentionally discharged a firearm causing great bodily injury or death, in connection with the charge of murdering Gilbert and (2) personally and intentionally discharged a firearm, in connection with the fetal murder charge. The jury found personal use and discharge of a firearm enhancements alleged against defendant to be not true— indicating the jury believed Betancourt was the actual killer.[4]

---

[3]    The jury also found defendant guilty on the robbery charges, which were unrelated to the murders.

[4]    On appeal from the criminal judgment, this court addressed instructional error claims that necessitated opining on the theory of murder the jury relied on in convicting defendant. We describe what this court previously held but we do not rely on that holding in resolving this appeal.

A prior panel of this court held defendant's conviction for the first degree murder of Gilbert and the associated multiple

Years later, defendant filed a section 1172.6 petition for resentencing. He checked boxes on the form petition asserting he was convicted of first or second degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine and he could not be convicted of first or second degree murder because of recent amendments to sections 188 and 189. He also requested appointment of counsel.

The trial court denied the petition without first appointing counsel for defendant. Expressly relying on our decision in *Betancourt*, the court found defendant was not entitled to relief as a matter of law because he "was convicted as a direct aider and abettor . . . with his own intent to kill. He was not convicted under a theory of felony-murder or a theory of natural and probable consequences. [¶] . . . The appellate opinion affirming [defendant's] conviction . . . reflects that [defendant] was

---

murder special circumstance true finding appropriately rested on instructions that required the jury to find defendant (and Betancourt) intended to kill her. This court further held the jury instructions, considered as a whole and in light of the statement made by the trial court concerning the theories of murder at issue, dispelled any reasonable possibility that the jury "understood the isolated reference in CALJIC No. 8.10 referring to an inherently dangerous felony" to permit conviction of defendant for either murder on a felony murder theory. Specifically, as to the first degree murder conviction, this court held it was "not reasonably likely" that the jury relied on the felony murder rule without finding malice. As to the second degree murder conviction, this court opined "the jury must have found that [defendant and Betancourt] acted with implied malice" in light of the facts (including firing a gun at Gilbert's head multiple times at close range).

convicted of murder on a theory of being a direct perpetrator . . . ."

As already mentioned, we affirmed and our Supreme Court granted review and remanded the cause to us for reconsideration in light of its intervening decision in *Lewis*. We do that in the pages that follow.

## II. DISCUSSION

All parties agree that *Lewis* establishes the trial court erred by not appointing counsel for defendant before ruling on the section 1172.6 petition. The only dispute is whether that error is harmless. To establish prejudicial error under *Lewis*, it is defendant's burden to show it is reasonably probable that if he had been afforded assistance of counsel his petition would not have been summarily denied without an evidentiary hearing. (*Lewis*, *supra*, 11 Cal.5th at 974.) That standard is not met here—for the same reasons we originally identified in concluding defendant was ineligible for relief as a matter of law. The instructions and admonitions given (and not given) to defendant's trial jury (plus the jury's multiple murder special circumstance true finding, which must be predicated on a finding that the defendant was the actual killer or harbored an intent to kill as an aider and abettor (*People v. Nunez and Satele* (2013) 57 Cal.4th 1, 45)) establish defendant's murder convictions rest on a malice theory of murder, not felony murder or murder under the natural and probable consequences doctrine.

The *Betancourt* opinion demonstrates the jury was not instructed on natural and probable consequences murder. Defendant does not contend otherwise. That removes one of the two potential bases for section 1172.6 relief.

The other potential ground for relief is felony murder. Put more precisely, if there is a reasonable probability that defendant's trial jury convicted him of murder on a felony murder theory, the error in failing to appoint counsel is prejudicial and we must remand to the trial court for further proceedings under section 1172.6. As we now explain, for reasons we previously outlined in *Riley I* that continue to apply now, there is no such reasonable probability.

The trial court recognized "'this isn't a felony murder case'" and defendant's jury accordingly did not receive felony murder instructions. The jury was given the incorrect version of the CALJIC No. 8.10-patterned general murder instruction that referred to a felony inherently dangerous to human life and specified assault with a firearm. But, again, that doesn't matter. The instructions considered as a whole and the jury's multiple murder special circumstance true finding leave no doubt the jury found defendant intended to kill Gilbert—and his first degree murder conviction properly rests on a finding of express malice, a ground for murder liability that remains valid under current law. That means defendant is not entitled to resentencing on his first degree murder conviction. (See, e.g., *People v. Guillory* (2022) 82 Cal.App.5th 326, 329 ["Guillory could have been convicted under theories of murder liability that remain valid under current law, so she is ineligible for section 1172.6 relief"].) Defendant is also ineligible for resentencing as a matter of law on his second degree murder conviction because the jury instructions and proceedings during defendant's trial establish the jury's determination of guilt rests on a finding of implied malice, which again is a ground for murder liability that remains valid under current law. (*Ibid.*)

## DISPOSITION

The order denying defendant's section 1172.6 petition is affirmed.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, J.


We concur:



RUBIN, P. J.



KIM, J.